# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-09cr589S |
| | § | |
| MENTO NNANA KALUANYA. | § | 18 U.S.C. §1028A |
| Defendant | § | 18 U.S.C. §1347 |

## PLEA AGREEMENT

The United States of America, by and through its United States Attorney for the Southern District of Texas, and the undersigned Special Assistant United States Attorney, the defendant MENTO NNANA KALUANYA, and the defendant's counsel Alphonsus O. Ezeoke, have entered into the following plea agreement ("Agreement") pursuant to Fed. R. Crim. P. 11(c)(1)(A) and 11(c)(1)(B).

## THE DEFENDANT'S AGREEMENT

1.     The defendant agrees to plead guilty to Count One and Count Nine of the Superseding Indictment. Count One charges the defendant with health care fraud for executing and attempting to execute a scheme to defraud the Federal Health Insurance for the Aged and Disabled Program, also known as the Medicare Program ("hereinafter referred to as "Medicare"), in violation of Title 18, United States Code, Section 1347. The Medicare Program is a health care benefit program within the meaning of Title 18, United States Code, Section 24(b) which

affects interstate commerce. Count Nine charges the defendant with aggravated identity theft for knowingly transferring, possessing and using the personal identification information, namely the Universal Provider Identification Number (UPIN) and National Provider Identification Number (NPI) of Medicare physicians without authorization, during and in relation to the execution and attempted execution of a health care fraud scheme, in violation of Title 18, United States Code, Section 1347 and 1028A.

2.      By entering into this Agreement the defendant waives any right to have the facts that the law makes essential to the punishment of Count One and Count Nine, charged in the Superseding Indictment, proved to a jury or proven beyond a reasonable doubt.

## PUNISHMENT RANGE

3.      The statutory penalty for the violation of Title 18, United States Code, Section 1347, in Count One, is a fine of $250,000.00, or imprisonment of not more than ten (10) years, or both. 18 U.S.C. §§ 1347, 3571(b)(3). Additionally, the defendant may receive a term of supervised release after imprisonment of up to three (3) years. 18 U.S.C. §§ 3559(a)(3), 3583(b)(2). The defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then the defendant may be imprisoned for the entire term of supervised release, not to exceed two (2) years,

without credit for time already served on the term of supervised release prior to such violation. 18 U.S.C. §§ 3583(e)(3).

4.     The statutory penalty for the violation of Title 18, United States Code, Section 1028A, in Count Nine is a term of imprisonment of two (2) years, in addition to the punishment for the underlying felony of health care fraud under Title 18 United States Code, Section 1347, and a fine of up to $250,000. 18 U.S.C. §§ 1028A(a)(1), 1347, 3571(b)(3). A court shall not place on probation any person convicted of a violation of Title 18, United States Code, Section 1028A and the term of imprisonment imposed on the person shall run concurrent to the term of imprisonment imposed for the felony during which the means of identification was transferred, possessed, or used. 18 U.S.C. §§ 1028A(b)(1)-(2). Additionally, the defendant may receive a term of supervised release after imprisonment of up to one (1) year. 18 U.S.C. §§ 3559(a)(5), 3583(b)(3).

5.     The defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## FINE AND REIBURSEMENT

6.     The defendant understands that under the *United States Sentencing Commission Guidelines Manual* (herein after referred to as *"Sentencing Guidelines"* or *"U.S.S.G."*), the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the United States for the costs of any

imprisonment or term of supervised release, if any is ordered. The defendant agrees that any fine imposed by the Court will be due and payable immediately, and the defendant will not attempt to avoid or delay payment.

## MANDATORY SPECIAL ASSESSMENT

7.　　Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing the defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100.00 for each count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208; Attention: Finance.

## COOPERATION

8.　　The parties understand that the Agreement carries the potential for a motion for departure pursuant to U.S.S.G. §5K1.1. The defendant understands and agrees that whether such a motion is filed will be determined solely by the United States. Should the defendant's cooperation, in the sole judgment and discretion of the United States amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to U.S.S.G. §5K1.1. The defendant agrees to persist in his guilty plea through sentencing, to cooperate fully with the United States, and not to oppose the forfeiture of any assets contemplated in paragraphs 27 through 36 of this Agreement. The defendant understands and

agrees that the United States will not request that sentencing be deferred until his cooperation is complete.

9.     The defendant understands and agrees that the term "fully cooperate" as used in this Agreement includes providing all information relating to any criminal activity known to the defendant. The defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

a.     The defendant agrees that this Agreement binds only the United States Attorney for the Southern District of Texas and the defendant. It does not bind any other United States Attorney or any other component of the Department of Justice.

b.     The defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. The defendant further agrees to waive his Fifth Amendment privilege against self incrimination for the purpose of this Agreement.

c.     The defendant agrees to voluntarily attend any interviews and conferences as the United States may request.

d.     The defendant agrees to provide truthful, complete, and accurate information and testimony; and he understands that any false statements he makes to the Grand Jury, or at any court proceeding (civil or criminal), or to a government

agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes.

     e.    The defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation.

     10.    Should the recommended departure, if any, not meet the defendant's expectations, the defendant understands that he remains bound by the terms of this Agreement and cannot, for that reason alone, withdraw his plea.

## WAIVER OF APPEAL

     11.    The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined. Additionally, the defendant is aware that Title 28, United States Code, Section 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding. If the defendant instructs his attorney to file a notice of appeal at the time the sentence is imposed, the United States will seek specific performance of this provision.

     12.    In agreeing to these waivers, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any

estimate of the possible sentencing range under the *Sentencing Guidelines* that he may have received from his counsel, the United States, or the Probation Office is a prediction, not a promise, did not induce this guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. The defendant further understands and agrees that the *Sentencing Guidelines* are "effectively advisory" to the Court. *United States v. Booker,* 125 S.Ct. 738 (2005). Accordingly, the defendant understands that, although the Court must consult the *Sentencing Guidelines* and must take them into account when sentencing him, the Court is bound neither to follow the *Sentencing Guidelines*, nor to sentence the defendant within the guideline range calculated by the use of the *Sentencing Guidelines.*

13.     The defendant understands and agrees that each and all of his waivers contained in this Agreement are made in exchange for the corresponding concessions and undertakings to which this Agreement binds the United States.

## THE UNITED STATES' AGREEMENT

14.     The United States agrees to each of the following:

a.     If the defendant pleads guilty to Count One and Count Nine of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this Agreement, the United States will move to dismiss the

additional crimes of health care fraud charged in Counts Two through Seven, and aggravated identity theft charged in Counts Eight, and Ten through Fourteen in the Superseding Indictment in violation of Title 18, United States Code, Sections 1347 and 1028A, in connection with the criminal conduct discussed in this Agreement.

b. At the time of sentencing, the United States agrees not to oppose the defendant's anticipated request to the Court and the United States Probation Office that he receive a two level downward adjustment pursuant to U.S.S.G. § 3E1.1(a) should the defendant accept responsibility as contemplated by the *Sentencing Guidelines.*

c. If the defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), the United States agrees to file a motion for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense, if the defendant's offense level for Count One is 16 or greater.

d. The United States is unopposed to the defendant remaining on bond pending the sentencing in this matter.

## THE UNITED STATES' NON-WAIVER OF APPEAL

15. The United States reserves the right to carry out its responsibilities under the *Sentencing Guidelines.* Specifically, the United States reserves the right:

a.    To bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence investigation report;

b.    To set forth or dispute sentencing factors or facts material to sentencing;

c.    To seek resolution of such factors or facts in conference with the defendant's counsel and the Probation Office;

d.    To file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, Section 3553(a); and

e.    To appeal the sentence imposed or the manner in which it was determined.

## SENTENCE DETERMINATION

16.    The defendant is aware that the sentence will be imposed by the Court after consideration of the *Sentencing Guidelines,* which are advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). The defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which the defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable *Sentencing Guidelines.* The defendant understands and agrees that the parties'

positions regarding the application of the *Sentencing Guidelines* do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, the defendant cannot, for that reason alone, withdraw a guilty plea, and he will remain bound to fulfill all of his obligations under this Agreement.

## RIGHTS AT TRIAL

17.    The defendant represents to the Court that he is satisfied that his attorney has rendered effective counsel. The defendant understands that by entering into this Agreement he surrenders certain rights as provided herein. The defendant understands that the rights of a defendant include the following:

a.    If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the Court agree.

b.    At a trial, the United States would be required to present witnesses and other evidence against the defendant. The defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for the

defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

c.     At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify; however, if the defendant desired to do so, the defendant could testify on his own behalf.

## FACTUAL BASIS FOR GUILTY PLEA

18.     The defendant, MENTO NNANA KALUANYA is pleading guilty because he *is* in fact guilty of the charges contained in Count One and Count Nine of the Superseding Indictment. In pleading guilty to these counts the defendant acknowledges that the following facts are true, and if the United States were to proceed to trial, the following facts, among others could be proven beyond a reasonable doubt and would be offered to establish the defendant's guilt:

19.     HyCentral Medical Supplies & Equipment Company ("HyCentral"), was located at 121 W. Broadway, Suite 2, Derry, New Hampshire 03038, in the District of New Hampshire. The defendant was a resident of the State of Texas, in the Houston Division of the Southern District of Texas at all times relevant to the crimes charged in the Superseding Indictment. Beginning on or about June 20, 2005 the defendant was the sole owner of HyCentral as it was incorporated in the State of New Hampshire.

20.     The defendant submitted an enrollment application to the National Supplier Clearing House, Palmetto, GBA, on or about January 5, 2006 requesting enrollment in the federal Medicare Program as a supplier of durable medical equipment ("DME"). The defendant signed a certification statement on January 5, 2006 agreeing to, among other things, abide by the Medicare laws, regulations and program instructions. The defendant also agreed to not knowingly present or cause to be presented false and fraudulent claims to Medicare, and not to submit claims with deliberate ignorance or reckless disregard to the truth or falsity of the claims. The defendant signed the Medicare certification statement two additional times, on January 24, 2006 and on September 1, 2006, each time making the same promises and agreements.

21.     Medicare pays for medical supplies and DME subject to the program conditions and limitations. The terms and conditions include that a written physician order of a treating physician, and documentation supporting the medical necessity of the DME is obtained by the supplier prior to submission of a claim to Medicare, that the DME is reasonable and medically necessary, that the supplier maintain all required documentation, including proof of delivery for seven (7) years, and that the supplier may not sell, or allow any other individual or entity to use its Medicare billing number and privileges.

22.     The scheme to defraud Medicare that the defendant knowingly and willfully executed involved submitting false and fraudulent claims to Medicare, and receiving payment for those claims, for DME that was not ordered or prescribed by treating physicians, that was not medically necessary, that was not delivered to some Medicare beneficiaries, and that was not wanted by some Medicare beneficiaries. As part of the scheme to defraud Medicare, the defendant purchased Medicare beneficiary numbers and patient documentation from individuals to falsely and fraudulently represent to Medicare that beneficiaries had requested HyCentral provide them with DME ordered by their treating physicians. Additionally, in return for a portion of Medicare payments, the defendant allowed individuals not affiliated with HyCentral to bill Medicare for claims under HyCentral's Medicare supplier number, falsely and fraudulently representing that HyCentral had provided those beneficiaries with DME in compliance with the Medicare laws regulations and program instructions.

23.     During the time of its existence, from about June of 2005 to about August of 2008, the HyCentral office in Derry, New Hampshire was a false storefront. The office was not staffed 9 – 5 pm on Mondays through Fridays as the defendant told Medicare; rather the defendant had a friend go to the store periodically, a couple of hours a week. The store did not carry any inventory and was not accessible to the Medicare beneficiaries on whose behalf HyCentral

submitted claims because the majority of the beneficiaries were located in the Southern District of Texas and not in the district of New Hampshire. Additionally, the defendant failed to obtain the required documentation for approximately 300 Medicare beneficiaries prior to the submission of claims to Medicare and had incomplete, inaccurate and forged documentation for many others, with written orders that were not signed or dated by treating physicians, and forged prescriptions in the names of at least twelve (12) physicians.

24.     As part of the scheme to defraud the Medicare Program, the defendant submitted a claim to Medicare on November 17, 2007 for $3,273.12 for DME for a beneficiary with the initials B. B. and claim number 107323841468000. The defendant had a written physician order for B. B. in the HyCentral records that was not signed or dated by any physician. The regular treating physician of B. B. had not ordered the DME and B. B. stated she did not need or want the DME that was delivered. Further, the physician, Dr. R. B. whose name was printed on the physician order had never seen or treated B. B. HyCentral received a payment of $2,618.50 for this DME claim into a HyCentral bank account that only the defendant had access to and the defendant had knowledge of the claim and its payment through the Medicare Remittance statement that was sent to HyCentral.

25.     As part of the scheme to defraud the Medicare Program, the defendant submitted a claim to Medicare on September 18, 2007 without the knowledge or

authorization of Dr. L. N. for a beneficiary with the initials L. L. using the UPIN and NPI of Dr. L. N. The defendant had a written physician order for L. L. in the HyCentral records with the name of Dr. L. N. printed on it, but the physician order was unsigned and undated. Further Dr. L. N. had never seen or treated L. L., had not ordered any DME for L. L. and had not authorized the submission of a claim to Medicare under his name, UPIN or NPI for patient L. L. HyCentral received a payment for this DME claim into a HyCentral bank account that only the defendant had access to and the defendant had knowledge of the claim and its payment through the Medicare Remittance statement that was sent to HyCentral.

26.     In total, because of the plan to defraud the Medicare Program, HyCentral billed Medicare approximately $3,973,501.74 and was paid approximately $1,600,991.95 for claims submitted between May 1, 2006 and December 11, 2008.

## FINANCIAL DISCLOSURE

27.     Defendant agrees to make complete and truthful financial disclosure, including executing a sworn financial statement (Form OBD-500), within ten (10) days of the execution of this Agreement. Defendant agrees to attend any interviews requested by the United States prior to sentencing to completely and truthfully disclose financial information in order to determine the availability of assets to satisfy any Court ordered fine, restitution, or forfeiture.

## FORFEITURE

28.     This Agreement is being entered into by the United States on the basis of the Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has a financial interest. Defendant agrees to forfeit all property, real and personal that constitutes or is derived, directly or indirectly from gross proceeds traceable to the commission of an offense under Title 18, United States Code, Sections 1347.

29.     Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of at least $1,573,042.62 under Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(7), and Title 28, United States Code, Section 2461(c) as set forth in the Notice of Criminal Forfeiture in the Superseding Indictment. Defendant agrees to a personal money judgment for $1,573,042.62 against him and in favor of the United States of America. Defendant and the United States agree to credit the Defendant with the net proceeds recovered from the forfeiture of any property. All costs incident to the forfeiture, sale, or other disposition of the property, shall be deducted to reach the net amount to be credited against the money judgment.

30.     Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p) exists. Defendant agrees to

forfeit any of Defendant's property, or his interest in any property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied. Defendant agrees to take all steps necessary to pass clear title to all forfeitable assets to the United States, including but not limited to surrendering title, signing a consent decree, stipulating to facts regarding the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his property or assets, to deliver all funds and records of such assets to the United States.

## RESTITUTION

31. Defendant agrees that he fraudulently obtained at least $1,573,042.62 from his participation in the overall pattern of criminal conduct charged in Count One of the Superseding Indictment. Defendant stipulates and agrees that the following incurred monetary losses, in the amounts designated below, as a result of this criminal conduct.

a. The Medicare Program, loss in the amount of at least $1,573,042.62.

32. Defendant agrees to pay full restitution to all victims for all relevant conduct attributable to him in this case, regardless of the count of conviction.

33. Defendant agrees that any restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay

payment. Defendant understands that forfeiture and restitution are separate aspects of sentencing.

34.    The defendant hereby stipulates that any fine or restitution obligation imposed by the Court is not dischargeable in any case commenced by his creditors pursuant to the Bankruptcy Code. The defendant hereby stipulates and agrees not to attempt to avoid paying any fine or restitution imposed by the Court through any proceeding pursuant to the United States Bankruptcy Code, and not to institute or participate in any proceeding to interfere with, alter, or bar enforcement of any fine or restitution obligation pursuant to automatic stay or any other provision of the Bankruptcy Code, in any case filed by him or his creditors. The defendant hereby waives all rights, if any, to obtain discharge or to delay payment of any fine or restitution obligation, or alter the time for payment, by filing a petition pursuant to the Bankruptcy Code.

35.    The defendant hereby stipulates that enforcement of any fine or restitution obligation by the United States, or by a victim, is not barred or affected by the automatic stay provision of the United States Bankruptcy Code, Title 11, United States Code, Section 362; and that enforcement of any fine or restitution obligation by the United States is a valid exercise of its police or regulatory power within the meaning of Title 11, United States Code, Section 362(b). Upon request of the United States or the victim, the defendant will execute an order or stipulation

granting the United States, or the victim, relief from the automatic stay or other Bankruptcy Code Provisions in order to enforce any fine or restitution obligation.

36. The defendant's waivers and stipulations or agreements set forth above are made in exchange for the United States' concessions set forth in this Agreement.

## BREACH OF PLEA AGREEMENT

37. If the defendant fails in any way to fulfill completely all of his obligations under this Agreement, the United States will be released from its obligations hereunder, and the defendant's plea and sentence will stand. If at any time the defendant retains, conceals, or disposes of assets in violation of this Agreement, or if the defendant knowingly withholds evidence, or is otherwise not completely truthful with the United States, then the United States may ask the Court to set aside his guilty plea and reinstate prosecution. Further, any information and documents that have been disclosed by the defendant, whether prior to or subsequent to the execution of this Agreement, and all leads derived therefrom, will be used against the defendant in any prosecution.

## COMPLETE AGREEMENT

38. This written Agreement consisting of twenty-two (22) pages, together with the attached addendum signed by the defendant and his attorney, constitute the complete Agreement between the United States, the defendant and his counsel.

No promises or representations have been made by the United States except as set forth in writing in this Agreement. The defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

39. Any modification of this Agreement must be in writing and signed by all parties.

Filed this the 1st day of March 2010, in Houston, the Southern District of Texas.

Mento Nnana Kaluanya
Defendant

Subscribed and sworn to, before me on the 1st day of March 2010:

By: _____
UNITED STATES
DISTRICT CLERK

APPROVED:

TIM JOHNSON
United States Attorney

By: _____
Julie M. Redlinger
Special Assistant US Attorney

_____
Alphonsus O. Ezeoke
Counsel for Defendant

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-09cr589S |
| | § | |
| MENTO NNANA KALUANYA. | § | 18 U.S.C. §1028A |
| Defendant | § | 18 U.S.C. §1347 |

## ADDENDUM TO PLEA AGREEMENT

I have fully explained to the defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provision of the *United States Sentencing Commission Guidelines Manual,* and I have fully and carefully explained to the defendant the provision thereof which may apply in this case. I have also explained to the defendant that the *Sentencing Guidelines* are only advisory and that the Court may sentence the defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of the Agreement with the defendant. To my knowledge, the defendant's decision to enter into the Agreement is an informed and voluntary one.

_____
Counsel for Defendant

March 1, 2010
_____
Date

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provision of the *United States Sentencing Commission Guidelines Manual,* which may apply in my case. I have read and carefully reviewed every part of the Agreement with my attorney. I understand the Agreement, and I voluntarily agree to its terms.

_____         03/01/010
Defendant                                        Date